```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


CARMEN L. LOPEZ,                    :    CIVIL ACTION
                                    :    NO. 13-6923
        Plaintiff,                  :
                                    :
    v.                              :
                                    :
CAROLYN W. COLVIN,                  :
                                    :
        Defendant.                  :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              March 30, 2016

Carmen Lopez ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision of Carolyn W. Colvin ("Commissioner" or "Defendant") – acting Commissioner of the Social Security Administration ("SSA") – denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the administrative record, submitted pleadings, Magistrate Judge Timothy R. Rice's Report and Recommendation ("R&R"), and Plaintiff's Objections thereto, the Court will remand for

additional explanation and/or reconsideration of portions of Defendant's decision.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

In September 2010, Plaintiff filed an application for DIB and SSI, alleging that she is disabled.[2] R. 166-73. According to various doctors, Plaintiff suffers from a number of ailments, including migraines, other physical pains, depression, and post-traumatic stress disorder, among other things. R&R 3-8, ECF No. 22. Plaintiff, who is now 36, has worked at Burger King and as a receptionist, but has not worked since 2010. R. 40, 42-45. She lives with her girlfriend and teenage daughter. R. 41.

An administrative law judge ("ALJ") held a hearing on Plaintiff's claim on April 10, 2012. R. 35. Plaintiff and an impartial vocational expert ("VE") testified. R. 36. That same month, the ALJ issued an unfavorable decision, finding that Plaintiff is not disabled for the purposes of the Social Security Act. R. 18-34. Plaintiff requested review by the Appeals Council, which also denied her request. R. 4-6.

Plaintiff commenced the present action on December 2, 2013, seeking judicial review of the ALJ's decision pursuant to

---

[1] Citations to "R." are citations to the administrative record, which is located on the docket at ECF number 10.

[2] This is Plaintiff's second DIB/SSI application. Her first application was also denied. She alleges that the disability initially began on April 9, 2007. R. 168.

42 U.S.C. § 405(g). ECF No. 3. On August 20, 2015, Magistrate Judge Timothy R. Rice entered a Report and Recommendation, recommending that Plaintiff's request for review be denied and judgment be entered in favor of Defendant. ECF No. 22. Plaintiff filed Objections, ECF No. 25, and the matter is now ripe for disposition.

## II. STANDARD OF REVIEW

The Court undertakes a de novo review of the portions of the R&R to which the plaintiff has objected. See 28 U.S.C. § 636(b)(1); Cont'l Cas. Co. v. Dominick D'Andrea, Inc., 150 F.3d 245, 250 (3d Cir. 1998). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

In reviewing the Commissioner's final determination that a person is not disabled and, therefore, not entitled to Social Security benefits, the Court may not independently weigh the evidence or substitute its own conclusions for those reached by the ALJ. See Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Instead, the Court must review the factual findings presented to determine whether they are supported by substantial evidence. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

3

Substantial evidence constitutes that which a "reasonable mind might accept as adequate to support a conclusion." Rutherford, 399 F.3d at 552 (internal quotation marks omitted). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" Id. (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the ALJ's decision is supported by substantial evidence, the Court may not set it aside "even if [the Court] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

An ALJ uses a five-step inquiry to determine if a plaintiff is entitled to SSI benefits. Basically, a plaintiff must establish that (1) she is not engaged in any "substantial gainful activity," and (2) she suffers from a severe impairment. Jesurum v. Sec'y of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (citing Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987)). If the plaintiff satisfies these two elements, the Commissioner determines (3) whether the impairment is as severe as the impairments listed in 20 C.F.R. pt. 404, Subpt. P, App. 1, which creates a presumption of disability. Id.

If the plaintiff's medical impairment is not "listed," the plaintiff must prove that (4) the impairment nonetheless prevents her from performing work that she has performed in the past. Id. The relevant inquiry is "whether the plaintiff retains

4

the residual functional capacity to perform her past relevant work." Fargnoli v. Massanari, 247 F.3d 34, 39 (3d Cir. 2001). If the plaintiff proves she does not, the Commissioner must grant her benefits unless the Commissioner can demonstrate (5) that considering the plaintiff's residual functional capacity, age, education, and work experience, there are jobs available in significant numbers in the national economy that the plaintiff can perform. Jesurum, 48 F.3d at 117 (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)).

**III. THE ALJ'S DECISION**

Using the five-step inquiry described above, the ALJ determined that Plaintiff is not disabled.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability. R. 23.

At step two, the ALJ found that Plaintiff suffers from the following severe impairments: degenerative disc disease of the cervical and lumbar spine, chronic pain disorder, migraine headaches, and depression. R. 23-24.

At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1. R. 24-26.

At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light, unskilled work without complex tasks or instructions, and that she is unable to perform any past relevant work. R. 26-29.

At step five, relying on the VE's testimony, the ALJ found that there are jobs available in significant numbers in the national economy that Plaintiff can perform. R. 29-31. Such jobs include order clerk and survey worker. R. 30. The ALJ thus found that Plaintiff is not entitled to the requested benefits.

**IV. DISCUSSION**

In her brief requesting review, Plaintiff argued that the ALJ erred by rejecting the opinions of three different doctors and by relying upon an incomplete hypothetical. Judge Rice rejected all four of Plaintiff's arguments in his R&R. Plaintiff has objected to Judge Rice's conclusions as to only two of her arguments. The Court will now consider those arguments, and will approve and adopt Judge Rice's findings and conclusions with respect to the other two arguments.[3]

---

[3] Those arguments were: (1) that the ALJ erred by giving little weight to the opinion of Dr. Bernard Bonner, a consultative psychologist; and (2) that the ALJ posed an incomplete hypothetical to the VE.

A.  <u>Dr. Bien-Aime</u>

First, Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Michel Bien-Aime, Plaintiff's treating psychiatrist.

As a general rule, the opinions of treating sources[4] are given more weight than the opinions of other medical professionals. 20 C.F.R. § 404.1527(c)(2). If a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it receives controlling weight. <u>Id.</u> If the opinion is not entitled to controlling weight, the ALJ will determine how much weight the opinion should receive by considering a number of factors, including: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the evidentiary support for the opinion; consistency with the remainder of the record; and whether the

---

[4] A treating source is a "physician, psychologist, or other acceptable medical source who provides [the plaintiff], or has provided [the plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the plaintiff]." 20 C.F.R. § 404.1502. If the plaintiff sees or has seen "the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the plaintiff's] medical condition(s)," the source is likely a treating source. <u>Id.</u>

7

medical issues in question are related to the source's area of specialty. Id. § 404.1527(c)(2)-(5).

The ALJ gave "very little weight as a whole" to the opinion of Dr. Bien-Aime because he came to inconsistent conclusions about Plaintiff's abilities. R. 25. Specifically, the ALJ said, Dr. Bien-Aime's "findings of several marked and extreme work-related mental restrictions" were "completely incongruent" with his assessments of mild limitations in daily living and social functioning, as well as "mild improvement indicated in treatment notes." Id.

Plaintiff argues that this determination was erroneous because there was in fact no conflict between Dr. Bien-Aime's individual findings. Here, Plaintiff may be correct, as the ALJ failed to provide satisfactory explanations for his rejection of Dr. Bien-Aime's conclusions.

The ALJ's decision to give little weight to Dr. Bien-Aime's opinion relied most heavily on this perceived conflict: Dr. Bien-Aime found that Plaintiff has only mild limitations in daily living and social functioning, but marked limitations in:

- maintaining attention and concentration for extended periods,
- setting realistic goals or making plans independently of others, and
- traveling in unfamiliar places or using public transportation;

8

and <u>extreme</u> limitations in:

- performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances, and

- completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods.

R. 534-35. According to the ALJ, the findings concerning marked or extreme limitations were inconsistent with the findings of mild limitations in daily living and social functioning.

The basis of the "conflict" the ALJ has identified here remains unclear. Although admittedly related to some degree, there is no inherent inconsistency between conclusions that an individual is only mildly limited in daily living and social functioning, but markedly or extremely limited in a few, precise areas of work-related functioning. Dr. Bien-Aime did not conclude that Plaintiff has marked or extreme limitations in <u>all</u> work-related areas, but rather in only the few listed above – a mere quarter of those he assessed.[5] And the ALJ has not

---

[5] Dr. Bien-Aime filled out a form with twenty potential "work limitations related to psychiatric state." R. 534. He concluded that Plaintiff is "not significantly impaired" in six of the functions, "moderately impaired" in nine of the functions, "markedly impaired" in three of the functions, and "extremely impaired" in two of the functions. <u>Id.</u> at 534-35. In other words, Dr. Bien-Aime concluded that Plaintiff is markedly or extremely limited in only five of twenty enumerated work-related areas of function. Had he opined that Plaintiff is markedly or extremely limited in <u>all</u> work-related areas, that conclusion would perhaps necessarily conflict with his findings

identified any reason why it is incongruent for Plaintiff to be mostly capable of taking care of her personal daily needs and interacting with others in a social capacity, while mostly incapable of performing adequately in a few specific ways at work. Home and work supply different environments with different expectations, demands, and levels of stress. The inability to perform at a consistent pace, for example, may not be a meaningful limitation for Plaintiff in her daily living, where she can structure her personal schedule to accommodate her need to rest, but a significant limitation in a work setting, where others set the pace at which work is to be performed. In short, if there is necessarily a conflict between the mild limitations assessed by Dr. Bien-Aime as to certain settings (daily living and social functioning), and the few specific marked and extreme limitations assessed by Dr. Bien-Aime as to another setting (work), the ALJ has failed to explain it.

  The ALJ also failed to sufficiently explain how "mild improvement indicated in treatment notes" necessarily conflicts with some findings of "marked and extreme work-related mental restrictions." R. 25. As with the other alleged conflict discussed above, it is not inherently inconsistent for Plaintiff to experience mild improvement, but still face marked and

---

of only mild limitations in daily living and social functioning (as there would likely be some overlap in function). But that is not what Dr. Bien-Aime found.

10

extreme work-related restrictions as to specific functions – or to experience improvement in some areas, but not others. The ALJ did not explain why those scenarios were not the case here.

Accordingly, the ALJ has failed to provide sufficient justification for largely rejecting the opinion of Plaintiff's treating psychiatrist. See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (explaining that an ALJ "cannot reject evidence for no reason or for the wrong reason" and "must consider all the evidence and give some reason for discounting the evidence she rejects"). The Court will thus remand to the ALJ for either additional explanation concerning the alleged inconsistencies in Dr. Bien-Aime's opinion, or reassessment of Plaintiff's limitations and residual functional capacity in light of Dr. Bien-Aime's opinion, if it is not again rejected.

B. Dr. Gensemer

Plaintiff also challenges the ALJ's treatment of Dr. Ira Gensemer's opinion. The ALJ gave significant weight to the opinion of Dr. Gensemer – a state psychologist who determined that Plaintiff "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment," R. 28 – because Dr. Gensemer was particularly familiar with "the standards of functioning employed in the disability determination process." Id. But the

11

ALJ did not note that Dr. Gensemer found that Plaintiff has moderate difficulties in social functioning. Plaintiff argues that the ALJ erred by failing to explain why his conclusion that Plaintiff has only mild difficulties in social functioning differed from Dr. Gensemer's.

Judge Rice concluded that this error[6] was harmless for two reasons. First, he said, the ALJ's finding of mild social limitations is supported by substantial evidence, regardless of Dr. Gensemer's opinion. And second, the ALJ fully adopted Dr. Gensemer's assessment of Plaintiff's residual functional capacity, which is the doctor's conclusion regarding what Plaintiff "can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). Dr. Gensemer determined that Plaintiff "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." R. 28. This opinion necessarily accounted for Dr. Gensemer's conclusion as to Plaintiff's limitations in social functioning, and the ALJ accepted it even though he believed that Plaintiff has fewer limitations than Dr. Gensemer believed. Accordingly, for the purposes of determining Plaintiff's

---

[6] Plaintiff, of course, believes that the ALJ erred here, and the R&R does not conclude otherwise. Thus, for the purposes of this review, the Court will assume that the ALJ did indeed err with respect to his treatment of Dr. Gensemer's opinion. The only disputed issue is whether that error was harmless.

12

residual functional capacity, the ALJ effectively accepted Dr. Gensemer's more generous assessment of Plaintiff's limitations – so it makes no difference that the ALJ did not explain why his own assessment was less generous.

Plaintiff objects to this conclusion on the basis that it "flies in the face of longstanding Third Circuit authority." Pl.'s Obj. 6. But exactly how it contradicts controlling authority, Plaintiff does not say[7] – except to point to Ramirez v. Barnhart, 372 F.3d 546 (3d Cir. 2004), with only the explanation that Ramirez is significant because the "ALJ failed to convey her own finding that claimant often had deficiencies of concentration, persistence or pace in hypothetical." Pl.'s Obj. 6. In Ramirez, the ALJ noted that the plaintiff often suffered from "deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner." 372 F.3d at 552. But the hypothetical the ALJ posed to the VE failed to take into account that observation. Id. Accordingly, the Third Circuit vacated the district court's

---

[7] If Plaintiff's point is that harmless error is by nature inappropriate where an ALJ has erred, she is incorrect. The Third Circuit has repeatedly applied the harmless error standard to ALJ decisions. See, e.g., Perez v. Comm'r of Soc. Sec., 521 F. App'x 51, 55 n.4 (3d Cir. 2013); Seaman v. Soc. Sec. Admin., 321 F. App'x 134, 135-36 (3d Cir. 2009); Jackson v. Barnhart, 120 F. App'x 904, 906 (3d Cir. 2005); Albury v. Comm'r of Soc. Sec., 116 F. App'x 328, 330 (3d Cir. 2004); Perkins v. Barnhart, 79 F. App'x 512, 515 (3d Cir. 2003).

order affirming the ALJ's decision and remanded for further proceedings before the ALJ. Id. at 552-56.

Ramirez's relevance to the question of harmless error in the case at hand remains unclear.[8] Plaintiff's apparent argument is that ALJs have a duty to explain their findings, which is beside the point – to be sure, an ALJ can err by failing to explain certain findings. But the question here is whether that error is harmless, as to which Plaintiff has offered no argument. Indeed, given the reasons identified in the R&R, it is evident that the alleged error – if indeed an error – was in fact harmless. Accordingly, the ALJ's treatment of Dr. Gensemer's opinion does not present a basis for reversal.[9]

V.  CONCLUSION

For the foregoing reasons, the Court remands to the ALJ for either additional explanation about the alleged flaws in Dr. Bien-Aime's opinion, or reevaluation of Plaintiff's abilities in light of Dr. Bien-Aime's assessments.

---

[8]  Ramirez never discusses harmless error.

[9]  Of course, if the ALJ reconsiders Dr. Bien-Aime's opinion on remand, the ALJ may also revisit other findings by necessity, including those concerning Dr. Gensemer's opinion.

14